# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARY LU CROSBY,

    Plaintiff,

    v.

JOHN E. POTTER, Postmaster General,

    Defendant.

No. 06 C 3356
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. Background

Plaintiff Mary Lu Crosby, a retired Postal Service employee, has filed suit against John Potter, the Postmaster General, alleging that she has been discriminated against by the United States Postal Service ("USPS") and was denied wages for work she performed. Previously, I granted the USPS's motion to dismiss Count II (denial of wages) for failure to state a claim. In Count I (the only remaining count), Crosby contends that she suffered retaliation in violation of Title VII when she was not permitted to return to work on either (1) June 22, 2005 after a letter from her doctor informed the Postal Service that Crosby could no longer perform her duties, or (2) July 13, 2005 after she submitted an updated doctor's letter that stated she could return to work with certain restrictions. Defendant Postmaster General now moves for summary judgment on Count I, arguing that Plaintiff has not presented sufficient evidence that she was retaliated against in violation of Title VII. Defendant's motion is granted.

### II. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

**III. Factual Background**[1]

Crosby was employed by the United States Postal Service ("USPS") from 1977 through 2005. Crosby was injured at work sometime in 1977 and that same year filed a Workers Compensation claim with the Department of Labor for injuries arising out of that incident. In 1990, the Postal Service approved Crosby for light duty restrictions. In 1993, Crosby became a supervisor in Business Mail Entry ("BME") in the bulk mail office at the post office in Carol Stream, Illinois. She held that position for about twelve years until her retirement in October 2005.

In 2003, Crosby underwent two back surgeries. Following those surgeries, she returned to work in June 2004. While serving as a BME supervisor in 2004 and 2005, Crosby reported to Leo Reese. On June 23, 2004, Crosby initiated an internal EEO complaint against Reese and another supervisor alleging race and disability discrimination for refusing to allow Crosby to return to the BME supervisor position. Crosby withdrew that complaint on July 12, 2004. Crosby returned to her BME supervisor position from June 2004 through June 22, 2005 under her doctor's medical restrictions that she work no more than four hours per day. There was no decrease in her pay. The only change in Crosby's employment was that another employee was brought in to perform some of Crosby's job duties, including lifting.

---

[1] I have cobbled together the following undisputed factual background from the parties' Local Rule statements of facts. Plaintiff failed to comply with the local rules in multiple instances by either making unsubstantiated denials to certain of Defendant's statement of facts or by adding gratuitous, unsubstantiated argument to her admissions. Accordingly, I have deemed Defendant's statement of facts in paragraphs 1-5, 7-12, 14, 16, 17, 19, 20, 23, and 28 admitted. I have further disregarded Plaintiff's unsupported and argumentative responses to paragraphs 8, 11, 12, and 26.

Dr. Fraser C. Henderson of Georgetown University Hospital began treating Crosby in March 2003. Dr. Henderson wrote letters to the Department of Labor on Crosby's behalf in relation to her pending Workers' Compensation claim. On March 23, 2005, Crosby wrote to Dr. Henderson requesting his assistance in various areas of her claim with the Department of Labor. On May 19, 2005, Dr. Henderson sent a letter to the Department of Labor regarding Crosby's 1977 injury and described the medical problems that Crosby presented when he first met with her in March 2003: "she noted progressive sensory loss, weakness, and pain. Significant problems with stumbling and falling, incontinence several times a week, and vision, hearing, memory and balance problems." Dr. Henderson further wrote that after each of the two surgeries he performed on Crosby, her pain initially subsided, but after a period of several months it returned. As of his last visit with Crosby, on March 1, 2004, Dr. Henderson remarked that "she was experiencing lower back pain radiating down into the left buttock and posterior thigh. She was also experiencing headaches, urinary incontinence, and weakness." Finally, Dr. Henderson concluded, "[t]herefore, in her current position at the postal service I do not believe she would be able to perform her duties."

The injury compensation office at the Carol Stream post office received a copy of Dr. Henderson's May, 19, 2005 letter on either June 5 or June 15, 2005. Reese too became aware of the May 19, 2005 letter from Dr. Henderson.

Dr. Eva Ostrowski, a physician employed by the Postal Service at Carol Stream, reviewed Dr. Henderson's letter regarding Crosby's medical condition and ability to perform her job duties. After reviewing the letter, Dr. Ostrowski informed Reese verbally and in writing that she believed Crosby was not medically fit for duty as a BME supervisor. Dr. Ostrowski's letter to

4

Reese, dated June 22, 2005, indicated that "Ms. Crosby needs to submit another medical statement when she is able to return to work. The statement should include specific restriction and expected duration of her restrictions."

On June 22, 2005, Reese called Crosby into his office and told her to go home and not to return without updated medical information from her treating physician. Reese believed he was required to send Crosby home because of Dr. Henderson's assessment of Crosby's medical condition, as contained in Dr. Henderson's May 19, 2005 letter.

About three weeks later, on July 12, 2005, Crosby came to the Carol Stream post office seeking to return to work in her position as BME Supervisor. Crosby had a new letter from Dr. Henderson regarding her updated work restrictions. The new letter, dated July 5, 2005, reported that Crosby's restrictions were: "work 4 hours per day as tolerated, no lifting over 4-lbs and no twisting or bending her neck." Reese was not present at the Carol Stream post office on July 12, 2005.

On July 13, 2005, Reese informed Crosby that the Postal Service could not allow her to return to work based on the medical information she presented.

On July 20, 2005, Crosby wrote a letter to Reese seeking "clarification on [her] work status." Crosby received a written response from Reese dated August 3, 2005. Reese's letter stated Crosby was not being allowed to work because of Dr. Henderson's May 19, 2005 letter. It also stated that Crosby was sent home when she attempted to return to work in July 2005 because her "medical was not evaluated by the Postal doctor(s) and the United States Postal Service was not provided adequate time to process [her] request to return to duty at the time [she] reported back to work." In closing, Reese wrote that Crosby was "to remain in an off duty status" until

she was medically cleared to return to work. He indicated that such notification would come from himself or someone else in his capacity. Crosby does not recall communicating with Reese, Dr. Ostrowski, or anyone else at the Postal Service about her employment status after receiving Reese's August 3, 2005 letter.

On September 20, 2005, Crosby timely filed an EEO complaint of discrimination against "Leo Reese, Supervisor and others working with him." On February 16, 2006, Crosby requested a final agency decision, which issued on March 24, 2006 and found no discrimination.[2]

Crosby filed a two-count complaint in June 2006 alleging denial of wages and discrimination. Count II (wage claim) was dismissed on June 29, 2007. Defendant now moves for summary judgment on Count I, Crosby's claim for retaliation under Title VII.

## IV. Discussion

### A. Threshold Issue

Crosby's response brief and her Local Rule 56.1(b)(3) statement of additional facts rely heavily on an affidavit Crosby submitted after Defendant's motion for summary judgment was filed. I do not consider the additional facts included in Crosby's affidavit because I am striking it from the record. When a Title VII plaintiff has had ample opportunity prior to summary judgment to describe incidents she believes constituted harassment, the Seventh Circuit has made

---

[2] Additional facts concerning Crosby's retirement are included in the record and subject to some degree of dispute, but they are not material to Defendant's motion. In brief, Defendant contends that on February 22, 2005, Crosby signed and dated an Application for Immediate Retirement. Crosby maintains that she did not apply for retirement until October 2005. I actually see no dispute, but I note these facts only to remark that I find unpersuasive Defendant's argument that because Crosby "decided to retire long before the alleged discriminatory acts of which she complains, Crosby cannot plausibly argue that her retirement constituted 'constructive discharge.'" This is not the law, and I do not rely on this argument in my opinion here.

clear that it "generally discount[s] – indeed, disregard[s] – an affidavit that is in conflict with a party's deposition testimony." *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 n.4 (7th Cir. 1997). Crosby's affidavit for the first time alleges that she was subject to hostile and discriminatory treatment by her supervisor during the period between the July 2004 withdrawal of her EEO complaint and July 2005 when she was sent home by Reese. In the four years since Crosby filed her 2005 EEO claim that forms the basis for this suit, she has had multiple opportunities to raise these allegations including: (1) the affidavit she submitted in support of her 2005 EEO claim; (2) the complaint filed in this case (which directly addresses Crosby's working conditions during the period July 2004 through July 2005); (3) her interrogatory responses (in which Crosby was directly asked to identify each and every act, event, incident which she contends constituted illegal discrimination or retaliation); and (4) her deposition (at which Crosby was asked repeatedly about her working conditions and environment following the withdrawal of her EEO claim in 2004). In light of these opportunities, Crosby's self-serving affidavit is too little, too late, and I disregard it.

### B. Retaliation Under the Direct Method of Proof

Title VII of the Civil Rights Act of 1964 forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Crosby may prove her claim of intentional employment discrimination under Title VII by using either the direct or indirect method of proof.

*de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681,685 (7th Cir. 2008) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Crosby has only proceeded under the direct method; as such I do not address the indirect method.

Under the direct method of proof, Crosby must demonstrate that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002) (citation omitted). In order to establish a causal link between protected activity and an adverse employment action, Crosby must demonstrate that the USPS would not have taken the alleged adverse action "but for" Crosby's protected activity. *See id.* In addition, "the hint of causation weakens as the time between the protected expression and the adverse action increases." *Id.*

Title VII only prohibits retaliation for opposing a practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663, 668 (7th Cir. 2006) (complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class). Of the three activities Crosby identifies in her complaint ((1) filing an Injury Compensation claim in 1977; (2) naming her supervisor, Leo Reese, in an EEOC complaint in 2004; and (3) making a claim for unpaid straight time wages), only one constitutes a protected activity for purposes of Title VII: Crosby's filing of an EEO charge in June 2004.[3]

---

[3] In her response brief, Crosby claims that she was also retaliated against for an internal EEO complaint she filed on July 5, 2005 and a corresponding September 20, 2005 EEO charge (which complained of disability discrimination and retaliation by Reese arising out of Plaintiff's claim for unpaid wages). Crosby did not raise these activities in her complaint as activities for which she was retaliated against, and thus I bar her from raising them now. In addition, Crosby has presented no evidence that Reese or any other decision maker at the Postal Service knew of these EEO activities at the time of the adverse action of which she complains. *See Tomanovich*,

The issue, then, is whether Crosby has raised a genuine issue of material fact as to the causal connection between the June 2004 EEOC charge and the adverse actions which occurred on June 22, 2005 (when she was first sent home from work) and on July 13, 2005 (when Reese informed Crosby that the Postal Service could still not allow her to return to work based on the updated medical information she provided on July 12, 2005.)[4]  Crosby acknowledges that she has no direct evidence of discrimination and instead argues that she has presented a "convincing mosaic" of circumstantial evidence of discrimination that precludes the entry of summary judgment.  *See Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006).  However, Crosby's purported "convincing mosaic" is largely based on her own inadmissible affidavit and fails to create a triable issue.

---

457 F.3d at 668 (employer must have actual knowledge of complaints for decision to be retaliatory).

[4] Defendant does not dispute that the actions complained of on June 22, 2005 and July 13, 2005 were adverse to Plaintiff for purposes of Title VII.  However, in her complaint Crosby further alleges that "[a]fter July 12, 2005, the Postal Service refused and ignored the Plaintiff's request to return to work and as a result the Plaintiff was caused to take an early retirement in order to support her family with the retirement benefits she had earned."  Defendant devotes a substantial portion of the briefing to an argument about whether Plaintiff's claim for constructive discharge was exhausted administratively.  Plaintiff disputes that she failed to exhaust this claim, either because the claim was included on her September 2005 charge or because the claim grew out of her earlier charge.  There is some support in fact and law for each of Plaintiff's arguments, but I need not reach the issue because Plaintiff cannot establish a causal connection between the adverse actions in June and July of 2005 and her protected activity in June 2004.  Alternatively, Plaintiff maintains that she was constructively discharged in October, when her retirement papers were processed.  Under that theory, Plaintiff would be required to show a causal connection between her 2004 EEO complaint and her October constructive discharge.  Ultimately, I need not decide whether a constructive discharge occurred in October or sometime during the summer, because for the reasons stated herein Plaintiff fails to establish that there was a causal connection between that discharge and her June 2004 protected activity.  Moreover, Plaintiff puts forth no additional evidence of discrimination specific to the alleged October constructive discharge.

9

An entire year or more separates Crosby's protected activity of filing an EEO charge on June 23, 2004 and the June 22 and July 13, 2005 incidents. This long delay weakens Crosby's proof of a causal link between the two. *See McGuire v. City of Springfield, Ill.*, 280 F.3d 794, 796 (7th Cir. 2002); *Oest v. Ill. Dept. Of Corrections*, 240 F.3d 605, 616 n.8 (7th Cir. 2001); *see also Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four-month lapse too attenuated to support causal link); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five months)*; Juarez v. Ameritech Mobile Communications*, *Inc.*, 957 F.2d 317, 321 (7th Cir. 1992) (six months); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (eight months); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) (one year). Moreover, just before June 22, 2005, there was an unambiguous intervening event that precipitated the complained of actions – Crosby's own doctor sent a letter to Defendant on May 19, 2005 (received by the injury compensation office at the Carol Stream post office on either June 5th or 15th), which stated that Crosby could not perform her job duties. Crosby argues that there are alleged inconsistencies in the testimony of Postal Service employees regarding the letter and reason for refusing to allow Crosby to return to work. However, even if such inconsistencies existed, they would need to be material, and no material issues of fact are presented here. The record indicates that Crosby was sent home because her own doctor's letter stated she could not perform her job duties. No reasonable finder of fact could discern a causal connection either between Crosby's 2004 EEO complaint and Reese sending Crosby home on June 23, 2005 or between the 2004 EEO complaint and Reese not allowing Crosby to return to work on July 13, 2005.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*
_____
James B. Zagel
United States District Judge

DATE: September 23, 2009